UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RENYATTA HAMILTON,

               Petitioner,

v.

ANTHONY STEWART,

               Respondent.

_____/

Case No. 2:15-cv-12709

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER
DENYING PETITION FOR WRIT OF HABEAS
CORPUS [7], DENYING CERTIFICATE OF APPEALABILITY,
AND DENYING PERMISSION TO APPEAL IN FORMA PAUPERIS**

The present action is a habeas case filed under 28 U.S.C. § 2254. Petitioner

Renyatta Hamilton was convicted after a jury trial in Macomb Circuit Court of first-

degree felony murder, Mich. Comp. Laws § 750.316(1)(b), possession of a firearm

during the commission of a felony, Mich. Comp. Laws § 750.227b, armed robbery,

Mich. Comp. Laws § 750.529, and conspiracy to commit armed robbery. Mich. Comp.

Laws § 750.157a. ECF 14-1, PgID 213. Peititoner was sentenced to life imprisonment

without the possibility of parole for the murder conviction and lesser terms for her

other convictions. ECF 14-9, PgID 975–76. On July 29, 2015, Petitioner filed her

initial habeas petition. ECF 1. After staying the case to allow her to exhaust three

additional claims, ECF 4, Petitioner filed an amended petition, ECF 7, and the Court

reopened the case. ECF 10. For the following reasons, the Court will deny the petition.

The Court will also deny a certificate of appealability and deny permission to appeal in forma pauperis.

## BACKGROUND

The Michigan Court of Appeals found that the prosecution presented sufficient evidence at trial to establish that Petitioner and Larry Stewart, her boyfriend and codefendant, "plotted to lure the victim, Kevin Brown, to an apartment building where defendant was staying and rob him." *People v. Hamilton*, No. 312910, 2014 WL 1233884, at *1 (Mich. Ct. App. Mar. 25, 2014).[1] Petitioner and Stewart were seen handling a revolver, and a witness stated that Stewart informed him that they intended to rob someone using the revolver. *Id.* In order to lure the victim to the apartment, Petitioner set up a date with him and asked him to pick her up at the apartment. *Id.* In the days leading up to the incident, Petitioner made several phone calls to both Stewart and the victim, including one on the day of the shooting. *Id.* When the victim arrived at the apartment to pick up Petitioner, Stewart was waiting in the hallway with the revolver. *Id.* "Stewart and Brown tussled in the hallway while [Petitioner] watched the events through the peephole in the door." *Id.* In the tussle, the victim was shot four times and died from his injuries.

Following her conviction and sentencing, Petitioner filed an appeal in the Michigan Court of Appeals. Her brief on appeal, filed by counsel, raised one claim: "Was there insufficient evidence that [Petitioner] was guilty of any of the offenses of

---

[1] Such findings are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009).

which she was convicted?" ECF 14-10, PgID 997. The Michigan Court of Appeals affirmed in an unpublished opinion. *See Hamilton*, 2014 WL 1233884. Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, raising the same claim. ECF 14-11, PgID 1062. The Michigan Supreme Court denied the application by form order. *People v. Hamilton*, 497 Mich. 882 (2014).

On July 29, 2015, Petitioner filed the present petition and a motion to hold the case in abeyance so that she could exhaust her state court remedies with respect to additional claims. ECF 1, 2. The Court granted the motion and stayed the case. ECF 6.

Petitioner then filed a motion for relief from judgment in the trial court, raising what now form her second, third, and fourth habeas claims. ECF 14-12. The trial court denied the motion, citing Michigan Court Rule 6.508(D)(3) that bars review of claims where good cause is not shown for failing to raise them on direct review, and also finding that the claims lacked merit. ECF 14-16.

Petitioner filed an application for leave to appeal in the Michigan Court of Appeals. The court denied the application for leave to appeal because Petitioner "failed to establish that the trial court erred in denying the motion for relief from judgment." ECF 14-17, PgID 1252. Petitioner filed for leave to appeal this decision to the Michigan Supreme Court, but it was denied with citation to Michigan Court Rule 6.508(D). *People v. Hamilton*, 501 Mich. 1035 (2018).

On June 6, 2018, Petitioner filed an amended petition for writ of habeas corpus. ECF 7. And on October 16, 2018, the Court reopened the case and directed Respondent to respond to the petition. ECF 10.

## STANDARD OF REVIEW

The Court may not grant habeas relief to a state prisoner unless her claims were adjudicated on the merits and the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established federal law. 28 U.S.C. § 2254(d)(1).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the] precedent." *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)).

The state court unreasonably applies Supreme Court precedent only when its application of precedent is "objectively unreasonable." *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003) (internal citations omitted). A merely "incorrect or erroneous" application is insufficient. *Id.* "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 654 (2004)).

A federal court reviews only whether a state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Greene v. Fisher*, 565 U.S. 34, 38 (2011). A state court need not cite to or be aware of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). Decisions by lower federal courts "may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)).

## DISCUSSION

The petition raises four claims: (1) insufficient evidence was presented at trial to sustain Petitioner's convictions, (2) information from Petitioner's cell phone was obtained in violation of the Fourth Amendment, (3) Petitioner's statement to police at the hospital should have been suppressed because she was not read her *Miranda* rights, and (4) Petitioner's trial and appellate counsel were ineffective for failing to raise her second and third habeas claims at trial and on direct appeal. ECF 7, PgID 61–63. The Court will address claim in turn.

I.    Procedural Default

As an initial matter, Respondent asserts that all of Petitioner's claims are procedurally defaulted. ECF 13, PgID 142. He claims that the sufficiency of the evidence claim was defaulted on direct appeal when it was presented to the state courts on a different basis than what was preserved at trial, and he claims that the

other claims are defaulted because they were not raised on direct review and the state court relied on Michigan Court Rule 6.508(d)(3) as grounds for denying relief. *Id.* at 153, 168, 176, 188. Petitioner argues that the defaults are excused by the ineffectiveness of her trial and appellate counsel for failing to preserve her claims. ECF 7, PgID 96–99.

The procedural-default doctrine is not jurisdictional. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [substantive] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525.

As will be discussed below, Petitioner's claims are more easily resolved against her on the merits. The procedural default argument is more complicated given Petitioner's exhausted ineffective assistance of counsel arguments, an analysis of which would involve some discussion of the merits anyway. Given these circumstances, the Court finds that the interests of judicial economy are best served by addressing the merits of Petitioner's claims.

II.    <u>Sufficiency of the Evidence Claim</u>

Petitioner first claims that there was insufficient evidence presented at trial to sustain her convictions. ECF 7, PgID 100. She asserts there was no evidence

indicating beyond a reasonable doubt that she participated in the crimes to establish her guilt as an aider and abettor. *Id.* at 106.

A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). The test is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. The standard recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.*

Moreover, because both the *Jackson* standard and § 2254(d) apply to Petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). As such, the standard erects "a nearly insurmountable hurdle" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2008) (citation omitted).

Here, the Michigan Court of Appeals rejected Petitioner's sufficiency of the evidence claim. *Hamilton*, 2014 WL 1233884, at *2. The court found that "the prosecution presented ample evidence that [Petitioner] conspired with Stewart to rob Brown." *Id.* The evidence included that Petitioner met Brown through her job at McDonald's where Brown would frequent, chat with her, and "flash" his significant

amount of money; that Petitioner invited Brown to pick her up for a date on the day of and location of the shooting; that on the days leading up to the shooting, Petitioner made hundreds of phone calls to both Brown and Stewart; and that one of those calls used the call waiting feature to be on the line with both men at one time. *Id.* at *2–3.

Additionally, the evidence relating to the revolver at issue in the case showed that Petitioner knew Stewart had a gun and that he intended to use it rob Brown; that a witness heard Petitioner and Stewart discuss where to keep the gun and that Petitioner ultimately put the gun in her purse; and that after the shooting occurred, the same witness heard Petitioner call Stewart to tell him that she had been shot and then called a second person to tell him that someone named "Larry" had been involved in a shooting. *Id.* at *3. The witness was able to identify the gun found at the scene as the one he had seen Petitioner place in her purse. *Id.*

Moreover, Petitioner's inconsistent statements to the police provided circumstantial evidence of her involvement—she told one officer that she did not know the people in the hallway involved in the shooting, but soon after asked the officer how Brown was doing and if he'd be okay indicating to the officer that she knew him through work; and she later admitted to another officer that Brown was in the apartment complex because she told him to pick her up for a picnic. *Id.* She made other inconsistent statements to the officer as well, including that she did not have a husband or boyfriend and did not know Stewart, only to later tell an officer that Stewart was her boyfriend. *Id.* She also claimed that she called 911, but her phone records indicate that she never did. *Id.*

Finally, Petitioner continually told officers that "it wasn't supposed to go down like this." *Id.* Based on all the evidence, the court held that it was reasonable for the jury to conclude that Petitioner "provided assistance to Stewart and that she was involved in coordinating the armed robbery of Brown." *Id.* at *4.

Petitioner argues that there are innocent explanations for the conduct used by the prosecution to establish a circumstantial case against her. Yet, the *Jackson* standard gives little weight to a petitioner's innocent explanation of evidence. Rather, it is well-settled that a jury is free to reject an innocent explanation for incriminating facts proved by the government. *United States v. Hughes*, 505 F.3d 578, 594 (6th Cir. 2007). The Michigan Court of Appeals' decision was therefore reasonable. The evidence allowed for the jury to find beyond a reasonable doubt that Petitioner aided and abetted Stewart in robbing and murdering the victim. The claim is therefore without merit.

III. Fourth Amendment Claim

Petitioner next asserts that the information obtained from her phone was admitted at trial in violation of the Fourth Amendment. ECF 7, PgID 75. The basis for this claim is unclear and not well developed as Petitioner consented to the search, and the police nevertheless obtained a warrant. ECF 14-6, PgID 65.

Even if Petitioner had not given her consent, the search of the apartment did not violate the Fourth Amendment because it occurred immediately after a shooting that occurred just outside while the shooter was still at large. *See Kentucky v. King*, 563 U.S. 452, 460 (2011) (a warrantless search was justified where it is necessary to

render emergency aid, to continue hot pursuit, or to prevent the imminent destruction of evidence).

And, in any event, such a Fourth Amendment claim is not cognizable on federal habeas review where the state provides a full and fair opportunity to litigate the claim. *Stone v. Powell*, 428 U.S. 465, 494–95 (1976). The relevant question then is whether Petitioner had an opportunity to litigate her Fourth Amendment claim, not whether she actually did so or even whether the Fourth Amendment claim was correctly decided. *See Wynne v. Renico*, 279 F. Supp. 2d 866, 892 (E.D. Mich. 2003), *rev'd on other grounds* 606 F.3d 867 (6th Cir. 2010).

Here, Michigan has a state procedural mechanism that provides a defendant a full opportunity to raise a Fourth Amendment claim before trial—Michigan courts apply the exclusionary rule to the fruits of unconstitutional searches and seizures. *See People v. Margelis*, 217 Mich. 423 (1922). Following the Supreme Court's decision in *Mapp v. Ohio*, 367 U.S. 643 (1961), Michigan courts have consistently acknowledged their duty, under both the federal and state constitutions, to suppress evidence seized in violation of the Fourth Amendment. *See, e.g.*, *People v. David*, 119 Mich. App. 289 (1982). Consequently, Michigan affords criminal defendants a vehicle by which to raise Fourth Amendment challenges. Petitioner's Fourth Amendment claim is therefore not cognizable in this action.

IV.     *Miranda* Claim

Petitioner next asserts that her statements at the hospital were erroneously admitted at trial because she was questioned before being given her rights under

*Miranda v. Arizona*, 384 U.S. 436 (1966). ECF 7, PgID 87. Custodial statements made by a criminal defendant may not be admitted at trial unless the prosecution demonstrates that the interrogating officers complied with the procedural safeguards laid out in *Miranda* and its progeny. *Miranda*, 384 U.S. at 444. Under established law, however, police officers are not required to administer *Miranda* warnings to every person whom they question, nor are they required to administer the warnings simply because the questioning takes place in a police station or because the questioned person is one whom they suspect of committing a crime. *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977). Instead, *Miranda* warnings are required "only where there has been such a restriction on a person's freedom as to render him [or her] 'in custody.'" *Mathiason*, 429 U.S. at 495. "Custody," for purposes of *Miranda*, requires a "significant deprivation of freedom." *See Mason v. Mitchell*, 320 F.3d 604, 632 (6th Cir. 2003).

Two discrete inquiries are essential in determining whether a person was in custody at time of the interrogation: (1) the Court must examine circumstances surrounding the interrogation; and (2) given those circumstances, the Court must ask whether a reasonable person would have felt that he or she was not at liberty to terminate the interrogation and leave. *Thompson v. Keohane*, 516 U.S. 99, 112 (1995). The initial determination of whether a suspect is in custody for purposes of *Miranda* depends on the objective circumstances of the interrogation and not on the subjective views harbored by the interrogating officer. *Stansbury v. California*, 511 U.S. 318, 323 (1994). An officer's unarticulated plan has no bearing upon whether a suspect is

"in custody," so as to require *Miranda* warnings. *Id.* The relevant inquiry is "how a reasonable man [or woman] in the suspect's position would have understood his [or her] situation." *See Berkemer v. McCarty*, 468 U.S. 420, 442 (1984).

Here, Officer Barbera testified at trial that while he was leaving the scene of the crime, he climbed into one of the ambulances to find Petitioner on a stretcher "as a victim," and not a suspect at that time. ECF 14-6, PgID 50, 57. Officer Barbera asked her what happened, and Petitioner gave a story that did not involve her as an aider or abettor in the crime. *Id.* at 51–53. Petitioner was not accompanied by police officers on the trip to the hospital. *Id.* at 60. About an hour later, Officer Barbera interviewed Petitioner at the hospital in a trauma room. *Id.* Despite being shot, Petitioner was "alert and orientated" and allowed Officer Barbera to search her cell phone. *Id.* at 61, 65.

Later that day, after Officer Barbera began to question Petitioner's truthfulness, he returned to speak with her after she was moved to a private room at the hospital. *Id.* at 68, 71–72. Officer Barbera returned on several occasions to the hospital to speak with Petitioner about the shooting, and on each occasion, Petitioner freely reiterated her story about what happened. *Id.* at 77–80. Petitioner was not put under arrest until much later after further investigation into the phone records. *Id.* at 87. As soon as Petitioner was arrested, the officer and detective present introduced themselves and immediately read her *Miranda* rights. ECF 14-7, PgID 22. After she was read her rights, she agreed to speak further with the officer and detective. *Id.*

Questioning a suspect in a hospital room when she is not under arrest is generally not considered a custodial interrogation. *See, e.g.*, *Dunham v. Rapelje*, No. 12-15322, 2016 WL 1182723, at *13 (E.D. Mich. March 28, 2016) (citing *United States v. New*, 491 F.3d 369, 373–74 (8th Cir. 2007) (defendant who was interviewed "in a private hospital room, confined to his bed in a neck brace and under medication" was not in custody); *United States v. Martin*, 781 F.2d 671, 673 (9th Cir. 1985) (suspect was not in custody when questioned at hospital as there was no evidence that the police were involved in his hospitalization)).

The fact that Petitioner was being treated in the hospital did not mean that she was in custody. And the record demonstrates that none of the other circumstances of Officer Barbera's pre-*Miranda* warning interactions with Petitioner would indicate to a reasonable person that she was "in custody." Rather, the evidence indicates that Petitioner was being treated as a victim, not as a suspect. The nature of Officer Barbera's questions would not have led a reasonable person in Petitioner's circumstances to believe that she was not free to leave. Indeed, once Officer Barbera put together the information from the phones and realized that Petitioner was involved it the commission of the crime, he placed Petitioner under arrest, she was given *Miranda* warnings, and the nature of the questioning changed significantly. Admission of statements made by Petitioner at the hospital before she was placed under arrest therefore did not violate her *Miranda* rights. Petitioner's *Miranda* claim is without merit.

V.    Ineffective Assistance of Counsel Claims

Finally, Petitioner asserts that she was denied the effective assistance of trial and appellate counsel for her attorneys' failure to preserve and present the claims at trial and on direct appeal that she advanced on state post-conviction review. ECF 7, PgID 95. By definition, counsel cannot be ineffective for a failure to raise an issue that lacks merit. *See, e.g.*, *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001). Because the claims raised on state post-conviction review lack merit, Petitioner's attorneys were not ineffective for failing to raise her claims earlier.

## CONCLUSION

For the foregoing reasons, the Court will deny Petitioner's petition for writ of habeas corpus.

In order to appeal the Court's decision, Petitioner must obtain a certificate of appealability. 28 U.S.C. § 2253(c)(2). The applicant is required to show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Here, jurists of reason would not debate the Court's conclusion that Petitioner has failed to demonstrate entitlement to habeas relief with respect to her claims because they are devoid of merit. A certificate of appealability will therefore be denied.

And if Petitioner chooses to appeal the Court's decision, she may not proceed in forma pauperis because an appeal could not be taken in good faith. 28 U.S.C. § 1915(a)(3).

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that the petition for writ of habeas corpus [7] is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner is **DENIED** leave to proceed in forma pauperis on appeal.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: January 28, 2020

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on January 28, 2020, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager